UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPRINGBOARDS TO EDUCATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:16-CV-2436-G |
| | ) | |
| KIPP FOUNDATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court are two motions: (1) the motion of the defendant KIPP Foundation to dismiss the claims of the plaintiff Springboards to Education, Inc. ("Springboards") against it under Federal Rule of Civil Procedure 12(b)(6) (docket entry 61), and (2) the motion of the defendants KIPP, Inc. and KIPP Texas Schools to dismiss Springboards's claims with prejudice pursuant to Federal Rule of Civil Procedure 41(b), or alternatively to dismiss the claims under Rule 12(b)(6) (docket entry 63). For the reasons stated below, KIPP Foundation's motion and KIPP, Inc. and KIPP Texas Schools' motion are both granted in part and denied in part.

## I. <u>BACKGROUND</u>

A full recitation of the factual background of this case is provided in the court's memorandum opinion and order issued on September 7, 2017. *See generally*

Memorandum Opinion and Order (docket entry 55). In that order, the court dismissed with prejudice the plaintiff's state law claims against KIPP, Inc. because the plaintiff failed to demonstrate that the court had subject matter jurisdiction over those claims. *Id.* at 10. The court then dismissed the remainder of the plaintiff's claims without prejudice, affording the plaintiff an opportunity to amend its complaint to cure the deficiencies contained therein. *Id.* at 12. The court specified that the issue with Springboards's previous complaint was that while Springboards referred to the individual defendants collectively and indiscriminately, compliance with Rule 8(a) requires plaintiffs to "attribute specific acts of infringement to each defendant." *Id.* On September 22, 2017, in conformity with this court's order, Springboards filed a new amended complaint. Second Amended Complaint (docket entry 56).

On October 20, 2017, one defendant, the KIPP Foundation, filed a renewed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that "[a]gain, [Springboards] fails to distinguish the alleged acts of infringement that it seeks to attribute to each defendant." Defendant KIPP Foundation's Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint; Defendant KIPP Foundation's Brief in Support of Its Motion to Dismiss Under Rule 12(b)(6) ("KIPP Foundation's Brief") at 2 (docket entry 62). On the same day, the remaining two defendants, KIPP Inc. and KIPP Texas Schools, filed a similar motion to dismiss,

maintaining that the amended complaint is "premised entirely on conclusory allegations and implausible speculation." KIPP, Inc. and KIPP Texas Schools' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b); KIPP, Inc. and KIPP Texas Schools' Brief in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b) ("KIPP, Inc. and KIPP Texas Schools' Brief") at 2 (docket entry 64).

On November 10, 2017, Springboards filed two separate responses to address each of the pending motions to dismiss. Plaintiff's Response to Defendant KIPP, Inc. and KIPP Texas Schools' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b) and Brief in Support ("Springboards's Response to KIPP, Inc. and KIPP Texas Schools' Motion") (docket entry 65); Plaintiff's Response to Defendant KIPP Foundation's Motion to Dismiss Under Rule 12(b)(6) and Brief in Support ("Springboards's Response to KIPP Foundation's Motion") (docket entry 66). Thereafter, on December 4, 2017, KIPP Foundation filed its reply, and KIPP, Inc. and KIPP Texas Schools filed their reply. KIPP Foundation's Reply Brief in Support of its Motion to Dismiss under Rule 12(b)(6) (docket entry 71); KIPP, Inc. and KIPP Texas Schools' Reply Brief (docket entry 72). The motions are now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

#### 1. *Rule 41(b)*

Federal Rule of Civil Procedure 41(b) provides, "if the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Rule 41(b) authorizes a district court to "dismiss an action *sua sponte* . . . for failure to comply with a court order." *Jone Jones Collection, Inc. v. Good Price Mart, Inc.*, No. 3:09-CV-2463-G, 2010 WL 2403727, at *2 (N.D. Tex. June 15, 2010) (Fish, Senior J.); see also *Long v. Simmons,* 77 F.3d 878, 879 (5th Cir. 1996). "Unless the dismissal order states otherwise," a dismissal under Rule 41(b) "operates as an adjudication on the merits." FED. R. CIV. P. 41(b). Before an action can be dismissed with prejudice under Rule 41(b), two "requisite" factors must be present and a third "aggravating" factor usually should be present. *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417-18 (5th Cir. 2006).

First, a dismissal with prejudice under Rule 41(b) is appropriate "only on a showing of a clear record of delay or contumacious conduct by the plaintiff." *Id*. at 417. A clear record of delay exists when there have been "'significant periods of total inactivity'" that persist "for longer than just a few months." *Millan v. USAA General Indemnity Company*, 546 F.3d 321, 327 (5th Cir. 2008); see also *Rogers v. Kroger Company*, 669 F.2d 317, 321 (5th Cir. 1982) ("The decisions of this court affirming

Rule 41(b) dismissals with prejudice involve egregious and sometimes outrageous delays.").  A clear record of contumacious conduct exists when the plaintiff has deliberately exhibited a "stubborn resistance to authority."  *Millan*, 546 F.3d at 327 ("'[I]t is not a party's negligence -- regardless of how careless, inconsiderate, or understandably exasperating -- that makes conduct contumacious . . . .'"); *McGowan v. Faulkner Concrete Pipe Company*, 659 F.2d 554, 558 (5th Cir. 1981) (equating "contumacious conduct" with "willful misconduct").

Although the decision to dismiss under Rule 41(b) is committed to the district court's discretion, its discretion to dismiss with prejudice has been confined to a narrow range of circumstances.  See *Raborn v. Inpatient Management Partners Inc.*, 278 Fed. App'x 402, 407 (5th Cir. 2008) (per curiam) ("Because [a dismissal with prejudice] forever deprives the litigant of the opportunity to pursue her claim, we have more closely managed the district court's discretion under Rule 41(b) than in other contexts."); *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) ("[T]his Court has limited the district court's discretion in dismissing cases with prejudice.").  For example, it is usually an abuse of discretion to dismiss an action with prejudice "where a plaintiff has failed only to comply with a few court orders or rules."  *Berry*, 975 F.2d at 1191-92 n.6 (citing cases); *Callip v. Harris County Child Welfare Department*, 757 F.2d 1513, 1520-21 (5th Cir. 1985) (per curiam) (collecting cases in support of the conclusion that "noncompliance with two or three orders or

rules of the district court" typically does not establish a clear record of delay or contumacious conduct); *Burden v. Yates*, 644 F.2d 503, 504-05 (5th Cir. 1981) (reversing the district court's order of dismissal under Rule 41(b), even though the plaintiff had "failed to obey the clear directives of the district court" on three separate occasions, where the "failure to comply with the court order was more a matter of negligence than purposeful delay or contumaciousness"). Dismissal with prejudice is appropriate only in "cases where the plaintiff's conduct has threatened the integrity of the judicial process, . . . leaving the court no choice but to deny that plaintiff its benefits." *Rogers*, 669 F.2d at 321.

Second, even where there is a clear record of delay or contumacious conduct by the plaintiff, the court must also make an explicit determination that lesser sanctions would not serve the best interests of justice. *Sealed Appellant*, 452 F.3d at 417; see also *Callip*, 757 F.2d at 1521 ("[W]e cannot affirm a dismissal unless the district court expressly considered alternative sanctions and determined that they would not be sufficient . . . or the record reveals that the district court employed lesser sanctions prior to dismissal . . . that in fact proved to be futile.").

Third, even where both of those requirements are satisfied, at least one of the following "aggravating factors" usually must be present to justify dismissal with prejudice under Rule 41(b): "(1) the delay was caused by the plaintiff, as opposed to her attorney; (2) the defendant suffered actual prejudice; or (3) the delay was caused

by intentional conduct." *Raborn*, 278 Fed. App'x at 404-05; see also *Sealed Appellant*, 452 F.3d at 418 ("We have stated that aggravating factors must 'usually' be found; we have not said they must 'always' be found.").

## 2. *Rule 12(b)(6)*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied,* 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id*.  The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id*. at 678.  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id*. at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims "across the line from conceivable to plausible."  See *id*. at 679, 683.

### 3. *The Lanham Act*

The Lanham Act imposes liability on "any person who, on or in connection with any goods . . . uses in commerce any word, term, name, . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . ." 15 U.S.C. § 1125(a)(1)(A); *T & L Computer Systems, Inc. v. Stanford*, 155 F. Supp. 2d 815, 817 (N.D. Tex. 2001) (Fish, J.). Claims for trademark counterfeiting, trademark infringement, and false designation -- like the ones brought by Springboards in this case -- require the plaintiff to establish commercial use of its mark. 15 U.S.C. §§ 1114, 1125; see *Full Sail, Inc. v. Dauben, Inc.*, No. 3:08-CV-0446-G, 2008 WL 2434313, at *3 (N.D. Tex. June 17, 2008) (Fish, Senior J.). For a trademark dilution claim, the Lanham Act specifically excludes "[a]ny noncommercial use of a mark." 15 U.S.C. § 1125(c)(3)(C). Hence, for a plaintiff's trademark dilution claim to survive a motion to dismiss, the plaintiff must plausibly assert commercial use.

To prevail on a claim of trademark infringement under 15 U.S.C. § 1114(1)(a), a plaintiff must prove (1) it is the owner of a valid and protectable or registerable mark, and (2) that the defendant's use of the mark creates a likelihood of confusion. *Full Sail, Inc.*, 2008 WL 2434313, at *3. Additionally, "the elements of trademark infringement and false designation of origin are identical, and the same

evidence will establish both claims." *VPI Holding Company v. Success Resources USA LLC,* No. 3:12-CV-3785-N, 2014 WL 12584331, at *3 (N.D. Tex. Dec. 2, 2014) (Godbey, J.). To state a claim for trademark counterfeiting under 15 U.S.C. § 1114(1), a plaintiff must allege that (1) defendants committed a trademark infringement in violation of 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit, as the term is defined in 15 U.S.C. § 1116. See *Haggar Clothing Company v. Sai Lakshmi Industries Private Limited*, No. 3:09-CV-0802-M, 2009 WL 2868443, at *5 (N.D. Tex. Sept. 3, 2009) (Lynn, J.). To recover under the federal anti-dilution statute, the plaintiff must demonstrate that (1) its mark is famous or distinctive, (2) the defendant adopted its mark after the mark became famous or distinctive, and (3) the defendant caused dilution of the plaintiff's mark. *Full Sail, Inc.*, 2008 WL 2434313, at *4.

## B. Application

### 1. *The Motion to Dismiss Springboards's Claims with Prejudice Pursuant to Rule 41(b)*

KIPP, Inc. and KIPP Texas Schools contend that Springboards has failed to "attribute specific acts of infringement to each defendant" pursuant to Rule 8(a). *See* Memorandum Opinion and Order at 12; KIPP, Inc. and KIPP Texas Schools' Brief at 4. According to KIPP, Inc. and KIPP Texas Schools, Springboards's new complaint does not provide specific allegations to each defendant despite the court's previous order; instead, KIPP, Inc. and KIPP Texas Schools argue, Springboards continues to

refer to all three defendants collectively.  KIPP, Inc. and KIPP Texas Schools' Brief at 4.

After assessing Springboards's new complaint, the court concludes that Springboards has satisfied its obligation under Rule 8(a) by properly pleading specific acts of infringement by each defendant.  Indeed, Springboards provides a list of the acts of infringement allegedly committed by the KIPP Foundation, KIPP, Inc., and KIPP Texas Schools.  Second Amended Complaint ¶¶ 48-50.  Accordingly, Springboards has met the standard under Rule 8(a) and has complied with the court's directive.  While the defendants maintain that Springboards's general use of "KIPP Defendants" violates Rule 8(a), KIPP, Inc. and KIPP Texas Schools' Brief at 4, the court concludes that this collective treatment is permissible in light of the new complaint's itemization specific to each defendant.  Because Springboards filed its new complaint by the court's deadline and has satisfied the conditions imposed on it, the court concludes that the factors necessary to dismiss with prejudice pursuant to Rule 41(b) have not been met.  For that reason, the court denies the motion to dismiss Springboards's claims with prejudice.

2.  *The Motions to Dismiss Springboards's*
*Federal Claims (Counts 1-4)*

Springboards asserts four separate causes of action against KIPP Foundation, KIPP, Inc., and KIPP Texas Schools under the Lanham Act: (1) trademark counterfeiting under 15 U.S.C. § 1114, (2) trademark infringement under 15 U.S.C.

§ 1114, (3) false designations of origin, false description under 15 U.S.C. § 1125(a), and (4) trademark dilution under 15 U.S.C. § 1125(c). *See* Second Amended Complaint ¶¶ 66-111.

KIPP Foundation, KIPP Texas Schools, and KIPP, Inc. (collectively, the "KIPP defendants") assert that Springboards's federal claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for four primary reasons. KIPP Foundation's Brief at 2; KIPP, Inc. and KIPP Texas Schools' Brief at 2. First, the KIPP Defendants assert that Springboards has failed to state a claim under the Lanham Act because its claims do not involve a *commercial* use of a trademark. KIPP, Inc. and KIPP Texas Schools' Brief at 6. Second, the KIPP defendants maintain that Springboards has failed to allege any confusion or injury as a result of the defendants' use of Springboards's mark. *Id.* at 11. Third, the KIPP defendants insist that Springboards has failed to demonstrate that its marks are either "famous" or "distinctive." *Id*. at 12-13. Finally, the KIPP defendants urge the court to dismiss Springboards's trademark counterfeit claim because Springboards has not asserted that the parties use the marks for the same goods or services. *Id*. at 14. For the reasons stated below, the court concludes that these arguments are unpersuasive and denies the motions to dismiss Springboards's federal claims.

a. Statutory Standing

The Supreme Court has determined that a plaintiff may bring a cause of action under the Lanham Act when the injury falls within the zone of interest, and the defendant proximately caused the alleged injury. *Lexmark International, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct. 1377, 1388, 1390 (2014). Thus, to bring a claim under the Lanham Act, a plaintiff must allege "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1395; see also *I Love Omni, LLC v. Omnitrition International, Inc.*, No. 3:16-CV-2410-G, 2017 WL 3086035, at *5 (N.D. Tex. Jul. 20, 2017) (Fish, Senior J.). After reviewing Springboards's latest complaint, the court concludes that Springboards has satisfied these criteria.

i. The Zone-of-Interest Test

A plaintiff may bring a cause of action when the plaintiff's interests "fall within the zone of interests protected by the law invoked." *Lexmark International, Inc.*, 134 S. Ct. at 1388. The Lanham Act is designed to "regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce." 15 U.S.C. § 1127. Therefore, a plaintiff falls within the zone of interest as a result of an "injury to a commercial interest in reputation or sales." *Lexmark International, Inc.*, 134 S. Ct. at 1390. This court has previously determined that when a competitor is "inducing customers to switch from a competitor," the zone-of-

interest injury has occurred. See *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02-CV-2727-G, 2004 WL 833595, at *13 (N.D. Tex. April 19, 2004) (Fish, Chief J.) (citing *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 461 (5th Cir. 2001)).

From the new complaint, it appears that KIPP defendants' use of the plaintiff's marks is directly preventing KIPP schools from purchasing similar goods and services from Springboards. The educational institutions are undoubtedly Springboards's targeted clientele. The KIPP defendants' use of Springboards's mark on similar goods and services is directly inducing KIPP schools to switch to a competing service provided internally. Springboards asserts that these schools are creating seemingly identical services while using Springboards's marks as opposed to purchasing the products from Springboards. Second Amended Complaint ¶¶ 42-43. Because Springboards has made factual allegations asserting a commercial injury, Springboards has sufficiently pleaded that it falls within the zone of interest for the Lanham Act.

ii. The Proximate Cause Requirement

A statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute. *Lexmark International, Inc.*, 134 S.Ct. at 1390. Hence, to survive a motion to dismiss, Springboards must aver that its injuries were proximately caused by each of the KIPP defendants' violations of the

statute. For a trademark counterfeit and infringement cause of action under 15 U.S.C. § 1114, Springboards must allege that its injuries directly resulted from each of the KIPP defendants' unauthorized use of its mark. For a false designation and trademark dilution cause of action under 15 U.S.C. § 1125, Springboards must plead that its economic or reputational injury ensued from the defendants' deception. See, *Lexmark International Inc.*, at 1390. Springboards claims that by using its registered marks, the KIPP defendants have damaged Springboards's reputation because they provide inferior products that lack the customization Springboards offers. Second Amended Complaint ¶¶ 56-57. Both Springboards's alleged loss of profits and reputational injury stem from the KIPP defendants' use of the registered marks in the form of lost potential customers and inferior products. *Id.* Accordingly, Springboards has sufficiently alleged that its injured reputation and loss of profits were proximately caused by the defendants' violations. Second Amended Complaint ¶¶ 42-43, 56-57. Because Springboards has satisfied the zone-of-interest test and the proximate cause requirement, Springboards has properly asserted that its federal claims fall within the Lanham Act.

### b. Commercial Use

The KIPP defendants argue that Springboards has not established that its claims arise from a commercial use as required by the Lanham Act. KIPP, Inc. and KIPP Texas Schools' Brief at 6. KIPP, Inc. and KIPP Texas Schools insist that their

Facebook advertisements cannot constitute commercial use because they contained "no links to commercial sites." *Id*. at 9. As support, KIPP, Inc and KIPP Texas Schools submit a recent decision in the Southern District of Texas that granted summary judgment against Springboards in a similar suit (docket entry 73). In that case, the court granted summary judgment in favor of the defendant -- Houston Independent School District -- because Springboards provided insufficient evidence to demonstrate commercial use. *Springboards to Education, Inc. v. Houston Independent School District*, 285 F. Supp. 3d 989, 995 (S.D. Tex. 2018). However, the Southern District of Texas previously concluded that Springboards had sufficiently pleaded assertions alleging commercial use and denied the motion to dismiss. *Springboards to Education, Inc. v. Houston Independent School District*, No. H-16-2625, 2017 WL 7201938, at *3 (S.D. Tex. Sept. 20, 2017). Similarly, this court concludes that Springboards has provided adequate factual allegations to assert a commercial use, and this issue will be better resolved at trial or through summary judgment. Because Springboards has sufficiently asserted a commercial injury, this court concludes that Springboards has met its standard of "stat[ing] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### c. Likelihood of Confusion

KIPP, Inc and KIPP Texas Schools contend that Springboards has failed to allege any confusion or injury as a result of the defendants' use of the mark. KIPP,

Inc. and KIPP Texas Schools' Brief at 11. As discussed above, Springboards has properly alleged an injury. As to confusion, KIPP, Inc. and KIPP Texas Schools argue that because Springboards is a corporation as opposed to an educational institution, the goods are "unrelated as a matter of law." KIPP, Inc. and KIPP Texas Schools' Brief at 12 (quoting *MCW, Inc.*, 2004 WL 833595, at *16).

To prevail on a Lanham Act claim for trademark counterfeiting, trademark infringement, or false designations of origin, a plaintiff must show the defendants' use of the mark is "likely to cause confusion." 15 U.S.C. §§ 1114(1)(a), 1125(a)(1). The Fifth Circuit has provided a nonexhaustive list of factors to consider as indications of confusion: (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). This court can find a likelihood of confusion even without a positive finding on a majority of these factors. *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 687 (N.D. Tex. 2015) (Fish, Senior J.). The court concludes that Springboards has alleged several instances of sources of confusion between Springboards's goods and those of the KIPP defendants. Springboards has pleaded that both Springboards and the KIPP defendants use marks identical or similar to "Millionaire Reader," "Million Dollar

Reader," and "Millionaire's Reading Club." Second Amended Complaint ¶¶ 22, 42, 43. In addition, Springboards has asserted that the parties provide similar educational services while employing a similar mark to "Read a Million Words." *Id*. ¶ 54. The court concludes that Springboards has plausibly pleaded a likelihood of confusion between the KIPP defendants' goods and its own. For these reasons the court denies the motions to dismiss the plaintiff's trademark infringement claim and false designations of origin and false description claim.

### d. Famous or Distinctive Mark

KIPP, Inc. and KIPP Texas Schools assert that the court should dismiss Springboards's trademark dilution claim because the Second Amended Complaint fails to demonstrate how Springboards's marks are either "famous" or "distinctive." KIPP, Inc. and KIPP Texas Schools' Brief at 12. The defendants posit that Springboards's trademarks consist of generic phrases related to reading a millions words. *Id*. at 13.

But the Fifth Circuit has previously concluded that "registration is *prima facie* proof that [a] registered mark is distinctive." *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005), *cert denied*, 547 U.S. 1055 (2006). This presumption can be overcome by showing that the mark is merely descriptive; if the presumption is rebutted, Springboards must then prove that its mark also possesses secondary meaning. *Id*. A secondary meaning occurs when "in the minds of the

- 18 -

public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Id*. at 566 (quoting *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000)). Springboards asserts that its marks, published on advertisements and promotional goods, have acquired notable recognition for the Springboards brand and the successful educational programs it offers. Second Amended Complaint ¶¶ 26-29. Because Springboards has alleged that its marks are registered, and asserted that its marks possess a secondary meaning, the court denies the motions to dismiss the plaintiff's trademark dilution claim.

### e. Same Goods or Services

KIPP, Inc. and KIPP Texas Schools urge the court to dismiss Springboards's trademark counterfeiting claim because Springboards has failed to allege that the parties use the counterfeit marks for the same goods or services. KIPP, Inc. and KIPP Texas Schools' Brief at 14. KIPP, Inc. and KIPP Texas Schools have asked the court to interpret the Lanham Act's definition of "counterfeit" pursuant to 15 U.S.C. § 1116(d)(1)(B) to encompass only marks on the "same goods or services" as those covered by the plaintiff's registration. *Playboy Enterprises, Inc. v, Universal Tel-A-Talk, Inc.*, No CIV. A. 96-CV-6961, 1998 WL 288423, at *4 (E.D. Pa. June 3, 1998) (dismissing trademark counterfeit claim because mark was not used for the same goods). This court, however, has not previously adopted the stringent interpretation that KIPP, Inc. and KIPP Texas Schools advocate. The Lanham Act defines

"counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. This court has interpreted a trademark counterfeit claim to operate as a trademark infringement with the addition of a defendant's intention to use the plaintiff's trademark, knowing it was a counterfeit. See *Haggar Clothing Company*, 2009 WL 2868443, at *5.

Regardless, even if the court were to adopt the definition urged by KIPP, Inc. and KIPP Texas Schools, the court would nonetheless conclude that Springboards had satisfied the definition. Springboards asserts that because it provides educational services and "programs for educators to use in schools," the parties' services are equivalent. Second Amended Complaint ¶ 14; Springboards's Response to KIPP, Inc. and KIPP Texas Schools' Motion at 20. Springboards has shown that its trademarks apply to not only to the goods but also to the services it provides. Second Amended Complaint ¶ 22. Because both Springboards and the KIPP defendants provide educational services that promote strengthening students' reading abilities in connection with the registered marks, at this stage, Springboards has satisfied the criteria of demonstrating the "same goods or services" using the marks.

Although not addressed by the KIPP defendants, Springboards has also properly asserted that the defendants "acted intentionally, knowing the mark . . . used was counterfeit." See *Grand Time Corporation v. Watch Factory Corporation*, No. 3:08-CV-1770-K, 2011 WL 2412960, at *7 (N.D. Tex. June 10, 2011) (Kinkeade, J.)

(dismissing plaintiff's summary judgment for trademark counterfeiting because the plaintiff failed to demonstrate that the defendant acted intentionally).  Springboards asserts that the KIPP defendants were aware of Springboards's services and programs before using similar marks.  Second Amended Complaint ¶¶ 59, 63, 75.  Accordingly, the court denies the motions to dismiss Springboards's trademark counterfeit claim.

### 3.  *The Motion to Dismiss Springboards's State Claims (Counts 5-8)*

Springboards asserts four state law claims against the defendants: (1) Texas Anti-Dilution Statute -- Texas Business & Commercial Code § 16.103, (2) common law trademark infringement, (3) common law unfair competition, and (4) conspiracy.  Second Amended Complaint ¶¶ 112-148.  For the reasons stated below, the motions to dismiss the trademark claims (counts 5-7) are denied, and the motions to dismiss the conspiracy claim (count 8) are granted.

### a.  State Law Trademark Claims (Counts 5-7)

Asserting a claim under the Texas Anti-Dilution Statute implicates the same standards as the Lanmark Act under 15 U.S.C. §§ 1114, 1125.  See *Sport Supply Group, Inc. v. Columbia Casualty Company*, 335 F.3d 453, 461 (5th Cir. 2003).  Further, the Fifth Circuit has previously held that "[an] unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (quoting *Horseshoe Bay Resort Sales*

*Company v. Lake Lyndon B. Johnson Improvement Corporation,* 53 S.W.3d 799, 806 n.3 (Tex. App. -- San Antonio 2001, pet. denied)). For the reasons stated above, Springboards has sufficiently pleaded its Texas Anti-Dilution Statute claim, common law trademark infringement claim, and unfair competition claim. Hence, the court denies the motions to dismiss these claims.

### b. Conspiracy Claim (Count 8)

The KIPP defendants assert that Springboards's conspiracy claim should be dismissed on four grounds: (1) Springboards has failed to demonstrate an underlying tort, (2) Springboards has failed to allege an underlying harm, (3) Springboards has failed to plead sufficient grounds to prove a "meeting of the minds," and (4) Springboards has failed to provide any factual allegations supporting an overt act. KIPP Foundation's Brief at 2-8; KIPP, Inc. and KIPP Texas Schools' Brief at 16. Because the court concluded above that Springboards has pleaded facts sufficient to prove unfair competition, a common law tort, the KIPP defendants' first argument is rejected. Further, because the court concluded above that sufficient factual allegations support the presence of an injury, the second ground is rejected as well.

To sufficiently plead the existence of a "meeting of the minds," the plaintiff must allege "a preconceived plan or a time and place at which [the defendants] had a meeting of the minds regarding the object of the conspiracy." *I Love Omni, LLC v. Omnitrition International, Inc.*, No 3:16-CV-2410-G, 2017 WL 1281130, at *3 (N.D.

Tex. Apr. 6, 2017) (Fish, Senior J.) (quoting *Samsung Electronics America, Inc. v. Yang Kun Chung,* No. 3:15-CV-4108-D, 2017 WL 635031, at *13 (N.D. Tex. Feb. 16, 2017) (Fitzwater, J.)). Further, the plaintiff must allege factual allegations "connecting the actions of [the defendants] to a preconceived plan" of the underlying tort -- unfair competition. *Id.*

In support of its conspiracy claim against the KIPP defendants, Springboards alleges that:

> [O]ne or more of the KIPP Defendants learned about
> Springboards to Education's Read a Million Words ® Campaign
> by attending one or more of the conferences attended by
> Springboards to Education, through its partner, Teach for
> America, and/or through public knowledge of Springboards to
> Education's Campaign.

Second Amended Complaint ¶ 38. The only factual assertion Springboards presents to support this claim is the knowledge that individual teachers hired by Teach for America work for institutions such as the KIPP schools, and allegedly participate in the "share curriculum programming." *Id*. ¶ 41. Springboards also asserts that the marriage between the co-founder of Teach for America and the CEO of the KIPP Foundation demonstrates the alleged conspiracy. *Id*. But this court has previously held that simply working together is insufficient to amount to conspiracy. See *I Love Omni, LLC*, 2017 WL 1281130, at *3. And, further, merely referencing the existence of a pre-existing personal relationship does not suffice to plead conspiracy. Accordingly, Springboards has not provided sufficient "factual content [to] allow[]

the court to draw the reasonable inference that the defendant[s][are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For this reason, the motions to dismiss the plaintiff's conspiracy claim are granted.

### III. CONCLUSION

For the reasons stated above, the KIPP Foundation's motion is **GRANTED** in part and **DENIED** in part, and KIPP, Inc. and KIPP Texas Schools' motion is **GRANTED** in part and **DENIED** in part. Springboard's conspiracy claims against KIPP Foundation, KIPP, Inc., and KIPP Texas Schools are **DISMISSED**. In all other respects, the motions to dismiss Springboards's Second Amended Complaint are **DENIED**.

**SO ORDERED.**

June 29, 2018.

_A. Joe Fish_
_____
**A. JOE FISH**
**Senior United States District Judge**